JUSTICE TRIEWEILER
specially concurring.
I submit the following concurring opinion in response to the dissent.
The dissent seems to agree that Carol Carrillo’s disability benefits were denied by the Workers’ Compensation Comrt for the wrong reason. The dissent then goes on to argue that that incorrect decision can be affirmed by taking a portion of her testimony out of context and making a semantic argument that it creates a conflict with other testimony regarding whether she was or was not on break at the time of her injury.
However, a review of the entire record discloses that there is only one point in the entire trial at which any witness is asked directly whether Carol Carrillo was or was not on break at the time she was injured. That point involved the question and answer cited in the majority opinion and relied on for its result.
Nowhere in the entire record did anyone testify that Carol Carrillo was not on break at the time of her injury.
On the other hand, in support of her unequivocal testimony that she was on break, the following undisputed facts were established by her testimony and the testimony of others:
1. Afternoon breaks were allowed during the period of time from 1:30 to 3:00 p.m.
2. The length of time for a break was normally from fifteen to twenty minutes.
3. During breaks employees were encouraged to leave their work stations and even leave the building.
4. Seventy-five to eighty percent of Blue Cross’s employees left the building during their break.
5. Carol Carrillo normally walked during her break and had she not been on her way to the Holter Museum to pick up a mug for her supervisor’s party she would, in all likelihood, still have been walking *18 at the exact time and place where she was injured. She walked ninety percent of the time during her afternoon break.
6. Carol Carrillo’s accident occurred at 2:15 p.m. within the normal parameters of her afternoon break.
7. Her break was something that was encouraged and provided as a right of employment in the employee handbook, and during her break she was paid.
8. Although she had to let other employees know where she was going in case her employer needed to recall her, she was free to go where she chose on break and it was not uncommon for employees to go to the walking mall, the Sweetgrass Bakery, Big Al’s, the Common Market, the Federal Building, the City-County Building, or to other local business establishments during their break.
Some confusion has been created and it is, at best, minimal confusion, due to the phraseology of questions or answers in which she stated that after returning from the Museum she intended to pick up a fellow employee and go to the Fuller Building to use their vending machines while on break. At one place in the transcript she states that she intended to go to the Fuller Building while “on break.” At another place she either states or was told that they would go to the Fuller Building for break. However, there is absolutely nowhere in the transcript where she or anyone else states that she was not already on break at the time that she was going to the Holter Museum. Furthermore, there is nothing inconsistent with starting her break by picking up a gift at the Holter Museum and continuing her break after picking up her co-employee and going to the Fuller Building to pick up refreshments. The record clearly establishes that all of these matters could have been accomplished well within the time allowed for afternoon breaks.
More importantly, neither is there any finding entered by the Workers’ Compensation Court to the effect that Carol was not on break at the time of her injury. The finding made by the court and relied on by the dissent is that after picking up her friend she intended to go to the Fuller Building for break. However, once again, that is not inconsistent with the fact that she was already on break prior to picking up her friend. Had she not been on break she could not have left the building in the first place.
Totally inconsistent with the dissent are the following findings made by the Workers’ Compensation Court:
*19 1. Blue Cross Blue Shield provided its employees with a fifteen minute break in the morning and another fifteen minute break in the afternoon. (Finding No. 4)
2. Employees at the Donovan Building often walked to the Fuller Building or other nearby locations (Coney Island, the Gold Bar) to take their breaks. (Finding No. 5)
3. A substantial number of employees walked during their breaks. (Finding No. 6)
4. On their breaks, employees would sometimes buy going-away gifts from nearby merchants. (Finding No. 7)
5. Claimant and her co-employees planned a going-away party for claimant’s supervisor and decided to buy her a replacement coffee mug for the one she had broken. (Finding No. 9)
6. At approximately 2:15 p.m. on March 2, 1993, claimant left the Donovan Building to go to the Holter Museum gift shop, which is approximately a block and a half away from the Donovan Building, to buy Lamping a replacement mug. (Finding No. 10)
I submit that there is no other conclusion that can be drawn from these findings in combination with the undisputed testimony other than that Carrillo was on break at the time of her injury.